UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**HEATHER LAICA-BHOGE and**
**ALBERTO BHOGE,**

        **Plaintiffs,**

v.                               Case No:   6:14-cv-1286-Orl-41KRS

**ELI LILLY AND COMPANY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

      This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF INDIANA PURSUANT TO 28 U.S.C. § 1404(a) (Doc. No. 37)** |
| **FILED:** | **February 16, 2015** |

**I.    BACKGROUND.**

      On August 8, 2014, Plaintiffs Heather Laica-Bhoge and Alberto Bhoge filed a complaint against Eli Lilly and Company ("Lilly"). Doc. No. 1. Plaintiffs alleged that Plaintiff Laica-Bhoge suffered serious and life-threatening withdrawal symptoms as a result of her ingestion and cessation of Cymbalta, a medication produced and marketed by Lilly. *Id.* ¶ 1. Plaintiffs alleged that they are residents of Seminole County, Florida and citizens of Florida, and that Lilly is an Indiana corporation with its headquarters in Indianapolis, Indiana. *Id.* ¶¶ 2-3. They asserted that the Court

has subject matter jurisdiction over their claims by means of diversity of citizenship, pursuant to 28 U.S.C. § 1332.  *Id.* ¶ 6.

On February 16, 2015, Plaintiffs filed the above-captioned motion to transfer venue to the United States District Court for the Southern District of Indiana.  Doc. No. 37.[1]  In support of their motion to transfer, Plaintiffs filed a declaration signed by Brent Wisner, one of Plaintiffs' attorneys of record authenticating documents attached to the declaration.  Doc. Nos. 37-1 through 37-10.  Lilly filed a response in opposition to the motion to transfer venue on March 5, 2015, Doc. No. 41.  It attached to its response the affidavit of one of its counsel of record, Phyllis A Jones, authenticating documents attached to the affidavit, Doc. Nos. 41-1 through 41-13.

Plaintiffs' motion to transfer venue has been referred to me for issuance of a report and recommendation.  It is now ripe for decision.

## II.     RELEVANT FACTS AND ALLEGATIONS.

Plaintiffs allege that in December 2010, Laica-Bhoge was prescribed Cymbalta by her physician for treatment of fibromyalgia and depression.  Doc. No. 1 ¶ 32.[2]  In September 2012, Laica-Bhoge was experiencing fatigue, cognitive issues, and migraines.  *Id.* ¶ 33.  Consequently, she began weaning herself off of Cymbalta under the care and supervision of her doctor.[3]  *Id.*

---

[1] Plaintiffs' counsel filed nearly identical motions in other Cymbalta withdrawal cases.  *E.g., Valentino v. Eli Lilly & Co.*, No. 6:14-cv-1816-Orl-41KRS, Doc. No. 26 (M.D. Fla. Feb. 16, 2015); *Krupp v. Eli Lilly & Co.*, No. 8:14-cv-2792-T-35TGW, Doc. No. 18 (M.D. Fla. Feb. 16, 2015).

[2] Although the complaint often references "Plaintiff" without indicating whether it is referring to Laica-Bhoge or Bhoge, it appears that such references correspond to Laica-Bhoge.  *Compare* Doc. No. 1 ¶ 1 (stating that Plaintiff Laica-Bhoge suffered serious and life-threatening withdrawal symptoms after discontinuing her use of Cymbalta), *with id.* ¶ 34 (stating that Plaintiff suffered serious and life threatening withdrawal symptoms after discontinuing her use of Cymbalta).

[3] In their initial disclosures, Plaintiffs identified the following medical providers that are likely to have discoverable information regarding the care and treatment of Plaintiff Laica-Bhoge: (1) Dr. Arnold Graham Smith; (2) Dr. Daniel Cochran; and (3) Florida Hospital Altamonte.  Doc. No. 41-9, at 4.  The disclosures indicate that each provider has an address that is located within the Middle District of Florida.  The disclosures also identify other witnesses that may have knowledge of Plaintiffs' claims.  Almost all of

Upon attempting to discontinue Cymbalta, Laica-Bhoge began having severe and dangerous withdrawal symptoms including excruciating shocks, dizziness, shaking, vomiting and shortness of breath. *Id.* ¶ 34. Plaintiffs allege that Lilly had knowledge that severe side effects were common, but failed to warn consumers of the actual rate and severity of withdrawal side effects. *Id.* ¶¶ 22, 25. Plaintiffs also take issue with Lilly's product labeling, marketing and advertising. *Id.* ¶ 21.

In conjunction with filing this case, Plaintiffs' counsel filed twenty-two other personal injury cases around the country involving Cymbalta withdrawal. Doc. No. 37, at 16.[4] Plaintiffs' counsel filed each of these cases in each plaintiff's respective home jurisdiction with the expectation that a multi-district litigation ("MDL") would be formed. *Id.* Shortly after filing these cases, Plaintiffs' counsel filed a motion with the Judicial Panel on Multidistrict Litigation ("JPML") to create an MDL that would centralize all Cymbalta withdrawal litigation in the Central District of California, the venue with the largest number of cases at the time. *Id.* While the motion was pending before the JPML, Plaintiffs' counsel continued to file Cymbalta withdrawal cases in courts throughout the country.

The JPML held a hearing on the motion for centralization on December 4, 2014, Doc. No. 37-10, and it issued an order denying the motion on December 10, 2014, Doc. No. 14. The JPML found that the Cymbalta withdrawal cases share factual issues concerning Cymbalta's development, marketing, labeling, and sale, but that centralization would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation. Doc. No. 14, at 2.

---

these potential witnesses reside in Florida. *Id.*

[4] Throughout this Report and Recommendation, when citing to Plaintiffs' motion I will refer to the page numbers assigned when the motion was filed in CM/ECF, rather than the page numbers assigned by Plaintiffs.

On January 13, 2015, January 22, 2015, and January 26, 2015, counsel exchanged letters in an effort to reach an across-the-board agreement on various discovery issues. Doc. Nos. 37-8, 41-4, 41-5. The correspondence indicates that Lilly was amenable to use of documents produced in other litigation in the pending cases subject to entry of an agreed-upon protective order. Doc. No. 41-4, at 2. Lilly was also agreeable to the use of depositions taken in other litigation in all pending Cymbalta cases. *Id.* at 3. Plaintiffs responded that "[t]he only practical way to proceed in these recently filed cases is to re-issue a new set of document requests to Lilly" because Lilly limited its previous responses to a specific client and produced only a selection of documents. Doc. No. 37-8, at 3.

Plaintiffs filed the instant motion on February 16, 2015. Doc. No. 37. In the motion, Plaintiffs represented that their counsel filed forty-seven Cymbalta withdrawal cases that remain pending in twenty-nine different courts across the country. *Id*. at 8. These cases include four cases filed in this district and one in the Southern District of Indiana. The motion also indicated that "[Plaintiff's] counsel [was] retained by over 2,700 individuals to investigate and potentially pursue Cymbalta withdrawal personal injury claims," and that several other law firms were independently retained "by over 1,500 clients to investigate and pursue Cymbalta withdrawal claims." *Id.* at 16 n.12.

The Court issued a Case Management and Scheduling Order on March 20, 2015. Doc. No. 42. The parties have exchanged initial disclosures, but no further discovery had been exchanged as of the date of filing the motion. *See* Doc. No. 37, at 14. Since filing Plaintiff's motion, it appears that Plaintiffs' counsel has filed additional Cymbalta withdrawal cases in the Southern

District of Indiana.[5]  However, it does not appear that any cases filed elsewhere have been transferred to the Southern District of Indiana.

**III.   APPLICABLE LAW.**

Plaintiffs ask that the Court transfer this case to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "District courts have broad discretion in deciding whether to transfer an action to a more convenient forum."  *Omega Patents, LLC v. Lear Corp.*, No. 6:07-cv-1422-Orl-35DAB, 2009 WL 1513392, at *2 (M.D. Fla. May 27, 2009) (citing *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988)).  As the parties seeking transfer, Plaintiffs bear the burden of establishing that this case should be transferred.  *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) ("[I]n the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient.").

The threshold question in deciding a motion to transfer pursuant to § 1404(a) is whether the action could originally have been brought in the proposed transferee court.  *See Kelling v. Hartford Life & Accident Ins. Co.*, 961 F. Supp. 2d 1216, 1219 (M.D. Fla. 2013) ("Transfer is inappropriate if the case could not have been filed in the proposed transferee district.").

---

[5] As of the writing of this Report and Recommendation, the following Cymbalta withdrawal cases were pending in the Southern District of Indiana: *Hill et al v. Eli Lilly & Co.*, No. 1:15-cv-141-JMS-DKL (six plaintiffs); *Boles et al v. Eli Lilly & Co.*, No. 1:15-cv-351-JMS-DKL (twenty plaintiffs), *Decrane v. Eli Lilly & Co.*, No. 1:15-cv-365-JMS-DKL (two plaintiffs); *Bickham v. Eli Lilly & Co.*, No. 1:15-cv-531-WTL-MJD (twenty plaintiffs); *Courtney v. Eli Lilly & Co.*, No. 1:15-cv-643 (six plaintiffs); *Washington et al v. Eli Lilly & Co.*, No. 1:15-cv-700-WTL-DML (two plaintiffs); *Jones et al v. Eli Lilly & Co.*, No. 1:15-cv-701-JMS-MJD (fifteen plaintiffs).

If the action could originally have been brought in the proposed transferee court, the next issue is "'whether a balancing of the convenience of the parties and the interest of justice favors transfer.'" *See Omega Patents, LLC*, No. 6:07-cv-1422-Orl-35DAB, 2009 WL 1513392, at *2 (quoting *First Fin. Bank v. CS Assets, LLC*, No. 08-0731-WS-M, 2009 WL 1211360, at *5 (S.D. Ala. May 4, 2009)). The United States Court of Appeals for the Eleventh Circuit has identified nine factors relevant to the Court's decision to transfer a case:

> (1) the convenience of the witnesses; (2) the location of the relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Kelling*, 961 F. Supp. 2d at 1218 (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)); *Watson v. Cmty. Educ. Ctrs., Inc.*, No. 2:10-cv-778-36SPC, 2011 WL 3516150, at *2 (M.D. Fla. Aug. 11, 2011) (citing *Manuel*, 430 F.3d at 1135 n.1).

**IV. ANALYSIS.**

The parties do not dispute that this action could have been brought in the Southern District of Indiana. Accordingly, the Court need only consider whether a balancing of the convenience of the parties and the interest of justice favors transfer. As discussed in detail below, after balancing the convenience of the parties and witnesses and the interests of justice, I recommend that the Court deny without prejudice Plaintiffs' motion to transfer this case to the Southern District of Indiana.

A. <u>Plaintiff's Choice of Forum.</u>

When deciding a motion to transfer under § 1404, the Court employs a "strong presumption against disturbing plaintiff's initial forum choice." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1100 (11th Cir. 2004) (quoting *La Seguridad v. Transytur Line*,

707 F.2d 1304, 1307 (11th Cir. 1983)). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B 1981)) (internal quotation marks omitted).

In the unusual circumstance in which the plaintiff seeks transfer of venue, the plaintiff's new choice of venue is relevant, but it may be afforded less deference than that afforded to the initial choice of forum. *See Pease v. Kelly Aerospace., Inc.*, No. 2:07-CV-0340-ID, 2010 WL 1542335, at *3 (N.D. Ala. Apr. 19, 2010); *Angrignon v. KLI, Inc.*, No. 08-81218-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 130424, at *6 (S.D. Fla. June 12, 2009). Although plaintiffs seeking transfer are not required to demonstrate a change of circumstances, courts may consider whether the new choice of venue is motivated by a change of circumstances. *See Cordis Corp. v. Siemens-Pacesetter, Inc.*, 682 F. Supp. 1200, 1203 (S.D. Fla. 1987).

Lilly directs the Court's attention to various cases in which Plaintiffs' counsel has filed similar motions to transfer on behalf of other Cymbalta withdrawal plaintiffs. The courts in these cases determined under almost identical circumstances that the plaintiff's choice of forum factor was either neutral or weighed against transfer. In *Krupp v. Eli Lilly & Co.*, No. 8:14-cv-2792-T-35TGW, Doc. No. 25, at 6-7 (M.D. Fla. Apr. 6, 2015),[6] the court noted that "[it] should not give undue deference to the plaintiff's new venue choice," and it found that the plaintiff's original venue choice was "entitled to substantial deference." In *Couch v. Eli Lilly & Co*, No. 1:14-CV-2564-MHC, Doc. No. 26, at 8-9 (N.D. Ga. Apr. 10, 2015),[7] the court determined that the plaintiff's choice

---

[6] Lilly filed a notice of supplemental authority which attaches a copy of the *Krupp* Order. *See* Doc. No. 45-1.

[7] Lilly filed a notice of supplemental authority which attaches a copy of the *Couch* Order. *See* Doc. No. 49-1.

of forum factor weighed strongly against transfer because the plaintiff chose the original forum, because the original forum was the plaintiff's home forum, and because the original forum had a significant connection to the activities alleged in the complaint. *Cf. FPC Corp. v. Uniplast, Inc.*, 994 F. Supp. 945, 946 (N.D. Ill. 1998) (giving little weight to a plaintiff's new choice of venue when it was not the plaintiff's home forum). In *Wheeler v. Eli Lilly & Co.*, No. 3:14-cv-1882 AJB (BLM), Doc. No. 30, at 5 (S.D. Cal. Apr. 10, 2015),[8] the court found that the plaintiff's choice of forum factor weighed neutrally because it was not the plaintiff's original choice of venue and because the plaintiff's motivation in choosing the venue was to create a *de facto* MDL. *Accord In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994) (affording little deference to a plaintiff's choice of forum when the plaintiff's primary goal was to effect a *de facto* multidistrict consolidation).

Here, Plaintiffs are residents of the Middle District of Florida, and they initially chose to litigate this case here in their home forum. Doc. No. 1 ¶ 2. Plaintiffs have alleged nine tortious causes of action, each of which arises under Florida law. A significant portion of the events giving rise to Plaintiffs' claims occurred in Florida. Turning to Plaintiffs' new choice of forum, Plaintiffs concede that their motion to transfer is entirely motivated by their desire to create a *de facto* MDL for Cymbalta withdrawal litigation. Doc. No. 37, at 8, 24. Plaintiffs expected that Cymbalta withdrawal cases would be consolidated in an MDL, and they contend that the present motion became necessary when the JPML denied their request to create an MDL. *Id.* at 8. Consequently, it appears that Plaintiffs' change of heart is attributed to a continuation of the status quo, not a change in circumstances. Under these circumstances, the plaintiff's choice of forum is, at best, neutral.

---

[8] Lilly filed a notice of supplemental authority which attaches a copy of the *Wheeler* Order. *See* Doc. No. 49-2.

B. Convenience of the Parties.

"Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964). "Where a transfer merely shifts the inconvenience from one party to another, Plaintiff's choice of forum should remain." *Eye Care Int'l, Inc. v. Underhill*, 119 F. Supp. 2d 1313, 1319 (M.D. Fla. 2000). "The Court places little weight on the domicile of corporate defendants and their place of incorporation," *Am. Safety Cas. Ins. Co. v. Bio-Tech Solutions, Inc.*, No. 1:05-1cv-3152-JEC, 2007 WL 951529, at *4 (N.D. Ga. Mar. 26, 2007) (quoting *Grey v. Cont'l Mktg. Assocs, Inc.*, 315 F. Supp. 826, 831–32 (N.D. Ga. 1970), or on an "alleged hardship [that is] unsupported by way of proof or affidavit," *Grey*, 315 F. Supp. at 831.

Here, Plaintiffs argue that transfer to the Southern District of Indiana will be more convenient for the parties because it would facilitate consolidation of Cymbalta withdrawal cases before a single judge, "creating a *de facto* MDL." Doc. No. 37, at 8. However, aside from speculating about cost sharing with other Cymbalta withdrawal plaintiffs, discussed below, Plaintiffs offer no reasons why transfer would be more convenient for them.[9]

Regardless of whether this action is transferred or not, one side will necessarily be inconvenienced by having to litigate this case outside its home forum. Transfer to the Southern District of Indiana shifts the inconvenience from Lilly to Plaintiffs; it does not eliminate the inconvenience. Under these circumstances, Plaintiffs have not demonstrated that the convenience of the parties is a factor that supports transfer. Therefore, this factor weighs against transfer.

---

[9] To be sure, consolidation would be more convenient for Plaintiffs' counsel who may very well be "mired down in [the] logistics" associated with filing cases in twenty nine different courts across the county. *See* Doc. No. 37, at 8. However, the convenience of counsel "is emphatically not a proper consideration in the §1404(a) transfer analysis." *Bartronics, Inc. v. Power-One, Inc.*, 510 F. Supp. 2d 634, 637 (S.D. Ala. 2007); *accord Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004) ("[T]he convenience of counsel is not relevant to the issue of transferring venue.").

  C. <u>Convenience of the Witnesses and Availability of Process to Compel the Attendance of Unwilling Witnesses</u>.

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses." *Elec. Transaction Network v. Katz*, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989). "[A] general allegation that witnesses will be necessary, without identifying those necessary witnesses and indicating what their testimony at trial will be," does not warrant transfer under § 1404(a). *J.I. Kislak Mortg. Corp. v. Connecticut Bank and Trust Co.*, 604 F. Supp. 346, 347 (S.D. Fla. 1985). In this respect, "a party seeking a transfer must demonstrate that the witnesses identified are key witnesses." *Homes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 694 (M.D. Fla. 2002). Furthermore, "when considering this factor, it is not so much the convenience of the witnesses but the possibility of having their testimony at the trial that is important. Thus, transfer may be denied when the witnesses, although in another district, are employees of a party and their presence can be obtained by that party." *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1361 (S.D. Fla. 2001).

 Plaintiffs acknowledge that proceeding in the Southern District of Indiana would be more convenient for some witnesses and less convenient for others. Doc. No. 37, at 27-28. Plaintiffs argue that if this case is not transferred Plaintiffs will not be able to compel in-person testimony from Defendant's corporate witnesses. Specifically, Plaintiffs identify Sarah A. Mescher, a regulatory labeling consultant, and Sharon L. Hoog, a medical adviser, as key witnesses that reside in the Southern District of Indiana. *Id.* at 28. Lilly acknowledges that certain party witnesses may reside in the Southern District of Indiana, but it contends that the convenience of non-party witnesses, and particularly Laica-Bhoge's medical providers, is the more important consideration. Doc. No. 41, at 17-18. Lilly correctly argues that it cannot compel these medical providers to

appear at trial in Indiana, and it persuasively asserts that it would be unlikely to convince the providers to appear voluntarily given the travel and inconvenience involved. *Id.* at 18.

In evaluating whether the convenience of the witnesses supports transfer, Lilly has the more persuasive position. Even if the Court assumes that the corporate witnesses identified are key witnesses, Lilly can make these witnesses available to testify at trial. "Defendant having opposed a transfer to Indiana, will be hard pressed to explain why they should not be required to produce their employees for trial in the [Middle] District of Florida". *Gollin v. Eli Lilly & Co.*, No. 0:14-cv-61810-DIMITROULEAS/SNOW, Doc. No. 29 (S.D. Fla. Mar. 31, 2015).[10] In contrast, Plaintiffs acknowledge that if the case is transferred to Indiana, Lilly may be relegated to using video depositions of medical providers at trial in place of live testimony. *See* Doc. No. 37, 28-29. Therefore, this factor weighs against transfer.

D. <u>Location of the Relevant Documents and the Relative Ease of Access to Sources of Proof</u>.

Plaintiffs posit that "nearly all of the documents and information relevant to common discovery are located in Indianapolis." Doc. No. 37, at 22-23. This argument says nothing about the location of the documents that are not subject to common discovery among Cymbalta withdrawal cases. Presumably, Laica-Bhoge's medical records are located in this district where she resides and where she received medical treatment. Moreover, "[m]odern technology largely neutralizes traditional obstacles to providing relevant documents and access to proof," thereby reducing the significance of this factor. *Watson*, No. 2:10-cv-00778-36SPC, 2011 WL 3516150, at *5 (citing *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 716 F. Supp. 2d 1322, 1327-28 (M.D. Fla. 2010)). Under these circumstances, this factor is neutral.

---

[10] Lilly filed a notice of supplemental authority which attaches a copy of this Order. *See* Doc. No. 44-1.

E. <u>Locus of Operative Facts</u>.

Plaintiffs contend that a significant portion of the events giving rise to this action occurred in the Southern District of Indiana. Doc. No. 37, at 19-20. Particularly, Plaintiffs reference the creation of misleading labels. *Id.* Lilly responds that the core events giving rise to Plaintiffs' claims occurred in the Middle District of Florida. Specifically, it states that Plaintiffs reside in Florida, Laica-Bhoge was treated in Florida, and that there is no indication that Laica-Bhoge took Cymbalta or experienced any alleged discontinuation symptoms outside of Florida. Doc. No. 41, at 14-15. Upon consideration of these arguments. it appears that Florida has a greater connection to the operative facts than Indiana does. *See Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 2160640, at *4 (E.D. Pa. July 17, 2009) ("In products liability cases, the claims typically arise in the plaintiff's home district."). This factor weighs against transfer.

F. <u>Relative Means of the Parties</u>.

Plaintiffs assert that transferring this matter to the Southern District of Indiana will significantly reduce the cost of litigation for all parties. Doc. No. 37, at 22. Particularly, Plaintiffs contend that upon transfer and consolidation common costs can be shared with other Cymbalta withdrawal plaintiffs. Such costs include appearance of counsel at court, resolution of common expert disputes, and resolution of common pretrial disputes. *Id.* Transfer would reduce Defendant's costs by permitting it to centralize its defense in its hometown. *Id.* at 23. Lilly responds that there is nothing to prevent counsel from making cost-saving arrangements they deem appropriate while the cases proceed in their existing venues. Doc. No. 41, at 11.

Plaintiffs concede that "if this matter were a stand-alone action, there would be no convenience in transferring this case to the Southern District of Indiana." Doc. No. 37, at 24. It appears that there are six Cymbalta withdrawal cases and sixty-nine Cymbalta withdrawal plaintiffs

proceeding in the Southern District of Indiana. There are also four Cymbalta withdrawal cases in the Middle District of Florida.[11] While centralizing Cymbalta withdrawal cases could result in cost saving, Plaintiffs' arguments are entirely too speculative to serve as the basis for transfer. The Cymbalta withdrawal cases proceeding in the Southern District of Indiana are not currently consolidated, and the Court should not speculate whether Cymbalta withdrawal cases will be consolidated in the future. Absent consolidation, this case is for all practical purposes a stand-alone action, and transfer might have no effect on Plaintiffs' costs. Moreover, it is evident that several districts, including this district, have issued orders denying the transfer to the Southern District of Indiana. Consequently, the litigation will not be completely centralized in the Southern District of Indiana at this time. Thus, this factor is neutral.

      G.    <u>Forum's Familiarity with the Governing Law</u>.

"[T]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). Plaintiffs admit that this case involves the application of Florida law, and that transfer of this matter would require that an out-of-state court apply Florida law. Doc. No. 37, at 26. Thus, this factor weighs against transfer. However, a court sitting in diversity in Indiana is fully capable of interpreting Florida law. *See Sterling v. Provident Life & Accident Ins. Co.*, 519 F. Supp. 2d 1195, 1208 (M.D. Fla. 2007) (noting that Florida court is fully competent to apply foreign law). Consequently, this factor is neutral.

---

[11] In addition to the present case, the following cases are pending in this District: *Valentino v. Eli Lilly & Co.*, No. 6:14-cv-1816-41KRS; *Krupp*, No. 8:14-cv-2792-31TGW; and, *Brotherton v. Eli Lilly & Co.*, No. 8:15-cv-2876-31TGW.

H.     Trial Efficiency and the Interests of Justice, Based on the Totality of the Circumstances.

Plaintiffs argue that transfer would be more efficient and save judicial resources by alleviating dozens of courts from having to adjudicate identical issues. Doc. No. 37, at 26. Specifically, Plaintiffs contend that upon transfer one court could:

> (1) determine the permissible scope of discovery; (2) enter important pretrial orders such as protective and scheduling orders; (3) conduct a *Daubert* analysis of the parties' experts; (4) determine whether punitive damages are appropriate; (5) uniformly address [Defendant's] affirmative defenses, i.e., preemption, learned intermediary, statute of limitations, etc.; (6) rule on the admissibility of common evidence, i.e., motions *in limine* and objections to exhibits and witness depositions; and (7) determine the proper issues for trial.

*Id.* at 25-26. This argument again presupposes consolidation of Cymbalta withdrawal cases. Several districts, including this district, have issued orders denying transfer of Cymbalta withdrawal cases to the Southern District of Indiana. Additionally, because Florida law applies to substantive issues concerning Plaintiffs' claims, it is unlikely that a court could resolve substantive issues on a uniform basis.

Moreover, the JPML considered these same arguments and determined "that centralization would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation." Doc. No. 14, at 2; *see also Krupp*, No. 8:14-cv-2792-T-35TGW, Doc. No. 25, at 9 ("While not expressly prohibited by statute or binding precedent, permitting Plaintiffs to use a § 1404 transfer as a 'pseudo-appellate vehicle for unhappy MDL petitioners' raises significant comity concerns." (citation omitted)).

Particularly, relevant to the JPML was that the cases involved varying procedural postures. Doc. No. 14, at 1. This issue is once again pertinent. In this case the parties conducted the required case management conference on February 2, 2015, Doc. No. 40, at 3, and the discovery period commenced on that date. The Court has issued a Case Management and Scheduling Order. Doc.

No. 42.  In comparison, it does not appear as of the writing of this Report and Recommendation that the plaintiffs in any of the Indiana cases have even perfected service on Lilly.  Thus, even assuming the Cymbalta claims were to be consolidated in Southern District of Indiana, this litigation in this Court would be stalled indefinitely as the claims of the other Cymbalta litigants reached a similar posture.  Under these circumstances, this factor weighs against transfer.

In sum, Plaintiffs bear the burden of persuading the Court that a transfer to the Southern District of Indiana is warranted.  As explained above, none of the factors relevant to the transfer analysis weighs in favor of transfer and a few weigh against transfer.  Accordingly, Plaintiffs have not met their burden of establishing that transfer is appropriate.

**V.     RECOMMENDATION.**

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the Court **DENY without prejudice** Plaintiffs' motion to transfer this case to the Southern District of Indiana.[12]

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on June 4, 2015.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[12] Should circumstances change, such as transfer and consolidation of most of the Cymbalta withdrawal cases in a particular forum, the Court may wish to entertain a renewed motion for transfer of venue.